ANN ZARCZYNSKI, individually and on behalf of all others similarly situated,

           Plaintiff,

vs.

WEBCOLLEX LLC d/b/a CKS FINANCIAL,

           Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 19-cv-1803

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

1.    This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2.    The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367.  Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.    Plaintiff Ann Zarczynski is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.    Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes.

5.    Defendant Webcollex, LLC ("CKS") is a debt collection agency with its principal offices located at 505 Independence Parkway, Suite 300, Chesapeake, Virginia 23320.

6.    CKS does business under the fictitious or trade name "CKS Financial."

7.      CKS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8.      CKS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9.      CKS is a "debt collector" as defined in 15 U.S.C. § 1692a.

## **FACTS**

### *February 22, 2019 Letter*

10.     On or about February 22, 2019, Defendant mailed a debt collection letter to Plaintiff regarding an alleged debt.  A copy of this letter is attached to this complaint as <u>Exhibit A</u>.

11.     Upon information and belief, <u>Exhibit A</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12.     Upon information and belief, <u>Exhibit A</u> is a form debt collection letter used by Defendant to attempt to collect alleged debts.

13.     Upon information and belief, the alleged debt to which <u>Exhibit A</u> refers was incurred for personal, family, or household purposes.

14.     Upon information and belief, the alleged debt to which <u>Exhibit A</u> refers was a consumer loan that Plaintiff obtained through non-party "LendingClub Corporation" ("LCC").

15.     LCC is a "peer-to-peer lending platform" that enables borrowers to create unsecured personal loans.  *See,*  https://www.lendingclub.com/public/how-peer-lending-works.action (accessed: May 20, 2019).

16.     The typical process for obtaining a consumer loan through LCC entails the consumer applying for a loan through LCC's online marketplace, LCC screening the borrower,

2

facilitating the transaction, and servicing a loan that is initially issued by WebBank but subsequently purchased by third-party investor:



https://www.lendingclub.com/public/how-peer-lending-works.action (accessed: December 9, 2019).

17. Upon information and belief, Exhibit A was mailed after Plaintiff orally authorized CKS to debt Plaintiff's credit card as a partial payment against the debt referenced in Exhibit A.

18. Exhibit A is materially confusing or misleading to the unsophisticated consumer.

19. Exhibit A is confusing and misleading as to a material aspect of the character, amount, or legal status of the debt referenced in Exhibit A, namely the identity of the creditor to whom the alleged debt referenced in Exhibit A.

20. The header in Exhibit A states:

Original Servicer: Lending Club Corporation          Post Charge-Off Interest: $.00
Original Account Number Ending In: 7570              Post Charge-Off Charges or Fees: $.00
Last Payment Amount: N/A                             Payments, Credits or Adjustments: $.00
Last Payment Date: 03/08/2018                        Total Balance: $5,484.58

Exhibit A.

21.     On its face, Exhibit A does not state the name of a "current creditor." *See Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 319 (7th Cir. 2016) ("The letters provided no additional details about the relationship between Asset Acceptance and Fulton. Nowhere did they say who *currently* owned the debt.") (emphasis added).

22.     Exhibit A states that the alleged debt's "Original Servicer" is "Lending Club Corporation" and that the "Original Creditor" is "WebBank" but does not state the name of the entity to whom the alleged debt is *currently* owed.

23.     A debt collector does not disclose the identity of the creditor by naming an entity without explicitly or implicitly making clear in the letter that the entity is the current creditor to whom the debt is owed. The unsophisticated consumer is aware that most debts are freely assignable and are regularly sold to third party debt buyers.

24.     The debt collector may disclose the identity of the creditor to whom the debt is owed by expressly identifying that entity as the "creditor," the "current creditor," or other non-confusing language, but must do so explicitly to ensure the letter is not ambiguous on the question of the current owner of the debt. *Janetos*, 825 F.3d at 322.

25.     Where a debt collector identifies an entity as the "original creditor" without otherwise making it clear that the debt collector is collecting the debt on behalf of that same entity, it implies that the current creditor is someone other than the original creditor. *E.g., Bentkowsky v. Benchmark Recovery Inc.*, 2015 U.S. Dist. LEXIS 12694, at *1-2 (N.D. Calif.

4

Feb. 2, 2015) ("Although the letter identified the correct creditor, it did not identify it as the current creditor. It instead labeled the creditor as the 'Original Creditor.' The letter therefore was confusing and left the reader unaware of the current creditor, in violation of the FDCPA.").

26. Indeed, a district court in the Eastern District of Michigan recently explained:

> The designation 'original creditor,' without any mention of the current creditor, unduly enhances the authority of the debt collector. A credulous consumer might very well be warned away from trying to settle his debt with the creditor directly. This doesn't just hurt the consumer. It illegally enhances the profitability of Defendant at the expense of law-abiding debt-collectors, which is exactly the sort of unfair competition the FDCPA was designed to counteract.

*Anderson v. Ray Klein, Inc.*, No. 18-cv-11389, 2019 U.S. Dist. LEXIS 63759, at *6 (E.D. Mich. Apr. 10, 2019); *see also, Hargis v. Equinox Collection Servs.*, No. 17-cv-410, 2019 U.S. Dist. LEXIS 92336, at *8-9 (N.D. Okla. June 3, 2019) (denying motion to dismiss where letter identified current creditor as "original creditor" and plaintiff "assert[ed] that the 'least sophisticated consumer would reasonably believe that the medical debt had been sold or assigned to a subsequent creditor'-when, in fact, it had not.").

27. The apparent contradiction between the plain meanings of the terms "creditor" and "original creditor" implies to the unsophisticated consumer that the "original creditor" is not the current creditor. *Bentkowsky*, 2015 U.S. Dist. LEXIS 12694, at *1-2; *Anderson*, 2019 U.S. Dist. LEXIS 63759, at *6; *see* 15 U.S.C. § 1692g(a)(5) (the consumer may request "the name and address of the *original creditor*, if different from the *current creditor*"); *Hargis*, 2019 U.S. Dist. LEXIS 92336, at *8-9; *see also Francisco v. Doctors & Merchants Credit Serv.*, 1998 U.S. Dist. LEXIS 12234, at *20 (N.D. Ill. July 29, 1998) ("*Apparent* contradictions of validation notices are analogous to literally false statements in trademark law, in the limited sense that they are thought to cause confusion by their very nature; in other words, apparent contradictions are thought to evidence per se confusingness, to borrow Judge Posner's phrase.").

5

28.     A debt collection letter that implies that a debt has been assigned must make it clear that the original creditor is the current creditor if that is the case.  *Janetos*, 825 F.3d at 322 ("Defendants do not explain how, in light of this language, an understanding of Asset Acceptance's former role would have shown its current role."); *Gritters v. Ocwen Loan Servicing, LLC*, 2018 U.S. Dist. LEXIS 63010, at *21-22 (N.D. Ill. Apr. 13, 2018 ("whether Gritters … could have figured it out despite what Pierce had written, is all beyond the point.  'A lucky guess would have nothing to do with any disclosure the letters provided.  Compliance with the clear requirements of § 1692g(a)(2) demands more.'  By failing to clearly disclose the name of 'the creditor to whom the debt is owed,' Pierce's validation notice violated the Act, without any need for extrinsic evidence of confusion.") (citing and quoting *Janetos*).

29.     Upon information and belief, the alleged debt referenced in Exhibit A had been purchased by either LendingClub or some third-party investor, and was not owed to the "Original Creditor," WebBank, at the time the letter was mailed.  *See, e.g., Bethune v. LendingClub Corp.*, No. 16 civ. 2578 (NRB), 2017 U.S. Dist. LEXIS 14914, at *2 (S.D.N.Y. Jan. 30, 2017) (describing WebBank's role as "to act as a 'pass through' for LendingClub's loans.").

30.     The unsophisticated consumer receiving Exhibit A would be confused or misled as to the entity to whom the debt referenced in Exhibit A was owed.

31.     Confusing and misleading representations about the name of the creditor are material misrepresentations because they create the potential for fraud or double-payments. *Janetos*, 825 F.3d at 324-25; *Taylor v. Alltran Fin., LP*, No. 18-cv-306-JMS-MJD, 2018 U.S. Dist. LEXIS 159862, at *6 (S.D. Ind. Sept. 19, 2018).

6

32.     Further, <u>Exhibit A</u> contains confusing and misleading "Last Payment" information, which suggests that the alleged debt referenced in <u>Exhibit A</u> may not be legitimate.

33.     <u>Exhibit A</u> states that the "Last Payment Date" was March 8, 2018, but also states that the "Last Payment Amount" is "N/A," and that the "Payments, Credits or Adjustments" for the alleged debt are "$.00."

34.     The representation that the debt collector has records of a consumer's payment but that the amount of that payment is "N/A" and the "Payments, Credits or Adjustments" is "$.00" is materially confusing and misleading to the consumer.

35.     The consumer either tendered a payment or did not tender a payment.  If the consumer did not tender a payment on March 8, 2018, then the March 8, 2018 "Last Payment Date" is false.  If the consumer did tender a payment on March 8, 2018, then the representation that the amount of that payment is "N/A" is deceptive and misleading.

36.     In either case, the unsophisticated consumer presented with a debt collection letter that falsely represented the account history would be materially confused and misled.  *See, e.g., Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004) (account history information is not "irrelevant" simply because the consumer can consult his own records to obtain clarification); *Smith v. Am. Revenue Corp.*, No. 04-cv-199-PRC, 2005 U.S. Dist. LEXIS 48680, at *18-19 (N.D. Ind. May 16, 2005) (same) (citing *Fields*, 383 F.3d at 566).

37.     Moreover, the unsophisticated consumer understands that the date and amount of last payment of a debt is a material aspect of the debt that appears on the consumer's credit report.  *E.g., Brancato v. Specialized Loan Servicing, LLC*, No. 15-cv-6780 (PGS)(LHG), 2018 U.S. Dist. LEXIS 96658, at *12-13 (D.N.J. June 8, 2018).

7

38.     In light of the confusing and inherently contradictory representations in Exhibit A, the consumer would feel threatened with the prospect of false information on her credit report. *Daley v. A & S Collection Assocs., Inc.*, 717 F. Supp. 2d 1150, 1155 (D. Or. 2010).

39.     The false and contradictory representations regarding the Last Payment Date and Amount are material to the consumer because they have important implications for consumer credit reporting, and also call into question whether other information in Exhibit A – including the total balance stated – was actually correct or was based on incorrect information, including the failure to process a prior payment.

40.     Additionally, the conflicting Last Payment information, alongside the failure to identify the current creditor, would   leave consumers scratching their heads and wondering whether and to whom the debt had been assigned, whether the letter was a legitimate collection effort, and whether the consumer should attempt to contact CKS to cancel the pending payment that she had scheduled.  *Janetos*, 825 F.3d at 324-25 (observing that false or confusing account information may signal that the debt collector was not acting legitimately); *Tourgeman v. Collins Fin. Servs., Inc.* 755 F.3d 1109, 1120 (9th Cir. 2014) (same); *Derosia v. Credit Corp. Sols.*, 2018 U.S. Dist. LEXIS 50016, at *9-10 (E.D. Wis. Mar. 27, 2018) (same); *Pardo v. Allied Interstate, LLC*, 2015 U.S. Dist. LEXIS 125526, at *6 (S.D. Ind. Sept. 21, 2015); *Green v. Monarch Recovery Mgmt.*, 2015 U.S. Dist. LEXIS 98765, at *15 (S.D. Ind. July 29, 2015); *Dilallo v. Miller & Steeno, P.C.*, 2016 U.S. Dist. LEXIS 116188, at *6 (N.D. Ill. Aug. 30, 2016) (same); *Walls v. United Collection Bureau, Inc.*, 2012 U.S. Dist. LEXIS 68079, at *5-6 (N.D. Ill. May 16, 2012) (same); *Braatz v. Leading Edge Recovery Solutions, LLC*, 2011 U.S. Dist. LEXIS 123118, at *4 (N.D. Ill. Oct. 20, 2011) (same).

8

41.    Consumers understand that consumer fraud is rampart in the debt buying industry, where even legitimate debts may lead to fraud because they may be sold to more than one purchaser at a time:

> Americans are currently late on more than $600 billion in bills, according to Federal Reserve research, and almost one person in 10 has a debt in collectors' hands. The agencies recoup what they can and sell the rest down-market, so that iffier and iffier debt is bought by shadier and shadier individuals. Deception is common. Scammers often sell the same portfolios of debt, called "paper," to several collection agencies at once, so a legitimate IOU gains illegitimate clones.

https://www.bloomberg.com/news/features/2017-12-06/millions-are-hounded-for-debt-they-don-t-owe-one-victim-fought-back-with-a-vengeance (accessed: December 9, 2019).

42.    The confusion engendered by Exhibits A and B is material because the unsophisticated consumer would be concerned about the possibility of having to pay the same debt twice, even assuming Defendants were not purposefully acting in bad faith. *Janetos*, 825 F.3d at 324-25; *see also, FTC v. Swatsworth*, 2018 U.S. Dist. LEXIS 142696, at *4 (W.D.N.C. Aug. 22, 2018) ("The loan information contained in the Portfolio that Defendants purchased was falsified. … No legitimate 500FastCash loans were ever sold to SQ Capital or Defendants.").

43.    Notwithstanding the confusion engendered by Exhibit A, Plaintiff did not revoke Defendant's authority to debit the payment in the amount of $75.00 referenced in Exhibit A.

### *March 18, 2019 Letter*

44.    On or about March 18, 2019, Defendant mailed another debt collection letter to Plaintiff regarding the same alleged debt referenced in Exhibit A. A copy of this letter is attached to this complaint as Exhibit B.

45.    Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

9

46.    Upon information and belief, Exhibit B is a form debt collection letter used by Defendant to attempt to collect alleged debts.

47.    The header in Exhibit B contains the following:

```
CKS Account ID:    ████0545
Original Creditor:  WebBank
Original Servicer: Lending Club Corporation          Post Charge-Off Interest:  $.00
Original Account Number Ending In:  7570              Post Charge-Off Charges or Fees:  $.00
Last Payment Amount:  $75.00                         Payments, Credits or Adjustments:  $.00
Last Payment Date: 02/26/2019                        Total Balance:  $5,409.58
```

Exhibit B.

48.    Like Exhibit A, Exhibit B identifies the "Original Creditor" as "WebBank" and the "Original Servicer" as "Lending Club Corporation" but does not identify a Current Creditor or otherwise state the name of the entity on whose behalf CKS is attempting to collect the debt referenced in Exhibit B.

49.    Further, the account history information in Exhibit B is contradictory, and inherently confusing and misleading to the unsophisticated consumer.

50.    Exhibit B represents that the "Last Payment Date" was February 26, 2019 and that the "Last Payment Amount" was $75.00, but also represents that the "Payments, Credits or Adjustments" associated with the alleged debt are "$.00."

51.    The unsophisticated consumer would be confused and misled about whether CKS had properly processed the "Last Payment" referenced in Exhibit B.

52.    The unsophisticated consumer would not know whether she needed to call CKS to confirm whether CKS had properly processed the February 26, 2019 payment in the amount of $75.00.

*Misleading Representations About Whether the Debt Would Accrue Interest or Fees*

53.     Each letter in Exhibits A and B stated that the alleged debt had accrued "Post Charge-Off Interest" and "Post Charge-Off Charges or Fees" in the amount of "$.00."

54.     Exhibits A and B threaten to collect "Post Charge-Off Interest" and other "Post Charge-Off Fees."  Although the amount of each is $0.00, the letter implies that there could be interest or other fees added to the debt in a future letter. *Tylke v. Diversified Adjustment Serv.*, No. 14-cv-748; 2014 U.S. Dist. LEXIS 153281, *7 (E.D. Wis. Oct. 28, 2014) ("the inclusion of a collection fee, even one showing a balance of zero, could imply the future possibility of one."); *Duarte v. General Revenue Corp.*, No. 17-cv-2754, 2017 U.S. Dist. LEXIS 188441, at *7-8 (N.D. Ill. Nov. 15, 2017) ("With regard to costs, the balance statement says only that the 'current cost balance' is zero.  The Court agrees with Duarte that this statement could plausibly imply that costs might accrue in the future, otherwise such a column would be unnecessary.").

55.     As a district court in the Northern District of Illinois recently held:

> [B]y stating that fees and collection costs stood at "$0.00," instead of stating something like "N/A" or declining to mention fees and collection costs at all, the letter reasonably could be read to imply that such charges would begin to accrue if Wood did not pay the debt.Why, after all, would Allied include a column for fees and collection charges, and insert a dollar figure ($0.00), if not to suggest that such fees and costs might possibly accrue in the future?

*Wood v. Allied Interstate, LLC*,  No. 17-cv-4921, 2018 U.S. Dist. LEXIS 98738, at *6 (N.D. Ill. June 13, 2018); *see also, Lemke v. Escallate, LLC*, No. 17-cv-5234, 2019 U.S. Dist. LEXIS 45152, at *7-9 (N.D. Ill. Mar. 19, 2019); *Duarte v. Client Servs.*, No. 18-c-1227, 2019 U.S. Dist. LEXIS 53900, at *5-9 (N.D. Ill. Mar. 29, 2019).

56.     On the face of Exhibit A, it is impossible to determine the amount that Defendant is attempting to collect because the letter is confusing as to whether the balance of the account is increasing as a result of interest and non-interest fees.

11

57.     The unsophisticated consumer would be confused and misled as to whether the references to "Post Charge-Off Interest" and other "Post Charge-Off Fees" meant that the account was bearing interest and other fees, and thus may actually be greater than the balance stated in Exhibit A by the time the consumer actually received Exhibit A.  *See, Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 974-48 (7th Cir. 2004).

58.     Upon information and belief, Defendant does not actually add interest and costs to consumer collection accounts.  Defendant did not add any interest, charges, or fees between Exhibit A and Exhibit B.

59.     If the account is not actually bearing interest and fees, the references to "Interest" and "Fees" confusingly and misleadingly imply to the unsophisticated consumer that it is bearing interest.

60.     Exhibit A does not state the amount of the debt in a non-confusing manner.  The unsophisticated consumer would be confused as to whether Defendant was attempting to collect a balance that was increasing as a result of interest and/or non-interest fees.

61.     The ambiguous zero amount itemizations could be interpreted in several different ways, only one of which may be correct:

> There are several possible ways the statement could be interpreted. For example, it is possible that, as the defendant suggests, an "unsophisticated consumer" might understand the statement to be explaining that no part of the debt is a 'collection fee' even though the Verizon agreement allows for one.  On the other hand, it is also possible that an "unsophisticated consumer" would interpret the statement to mean that there is no "collection fee" now but that one could be assessed later on.

*Tylke v. Diversified Adjustment Serv.*, 2014 U.S. Dist. LEXIS 153281, at *6-7 (E.D. Wis. Oct. 28, 2014).

12

62.     In the absence of an affirmative statement that the account was (or was not) bearing interest and non-interest fees, the ambiguous references to interest and non-interest fees "Post Charge-Off" could imply that interest and fees were accruing.

63.     The Seventh Circuit explained in *Chuway*, 362 F.3d at 949, that "[a] letter can be confusing even to a sophisticated reader though it does not contain an outright contradiction[.]"

64.     The apparent contradiction and confusion inherent in itemizing zero amounts is gratuitous.  Had Exhibits A and B simply stated that interest and fees were not accruing, they would not create such gratuitous and unnecessary confusion.  *Duarte*, 2017 U.S. Dist. LEXIS 188441, at *7-9; *Wood*, 2018 U.S. Dist. LEXIS 98738, at *6.

65.     The debt collector does not state the amount of the debt clearly if it ambiguously implies that the debt collector may be collecting accruing interest or fees when the balance is not actually increasing.  *Chuway*, 362 F.3d at 947:

> If the debt collector is trying to collect only the amount due on the date the letter is sent, then he complies with the Act by stating the "balance" due, stating that the creditor "has assigned your delinquent account to our agency for collection," and asking the recipient to remit the balance listed—and stopping there, without talk of the "current" balance.

66.     Furthermore, there is no explanation in the letter as to what the non-interest "Post Charge-Off Fees" are or would be.

67.     The unsophisticated consumer interprets references to "Fees" in collection letters, even when the amount is $0.00, as representations that the debt collector has a right to add charges to the alleged debt, and that charges will be sought in future letters.

68.     Defendant, however, could not add any collection fees to Plaintiff's account.

69.     As an unsecured consumer loan, the alleged debt referenced by Exhibits A and B is a "consumer credit transaction" under the WCA, Wis. Stat. §§ 421-427.

13

70. Wis. Stat. § 421.301(10) defines a "consumer credit transaction":

> a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant to an open-end credit plan or is a transaction involving other than open-end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

71. Plaintiff obtained the personal loan for the purpose of using the money to buy household goods and services. Plaintiff is a "customer," pursuant to Wis. Stat. § 421.301(17).

72. The creditor, whoever it is, is a "merchant" because it routinely lends money to consumers like Plaintiff. Wis. Stat. § 421.301(25). Defendant is also a merchant because it claims to have taken assignment (at least for collection purposes) of that consumer loan, and is collecting on that loan on behalf of the original creditor or some assignee.

73. Plaintiff obtained money on credit from the original creditor. Wis. Stat. § 421.301(14).

74. Plaintiff's loan required Plaintiff to pay interest (i.e. a finance charge) to the original creditor or assignee, and the loan was payable in more than two installments. Wis. Stat. §§ 421.301(20)(a), 421.301(30).

75. The WCA specifically prohibits the attachment of collection fees and other "default charges" on consumer credit transactions, even if the fee is separately negotiated. Wis. Stat. § 422.413(1) provides:

> no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

*See also, Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996).

14

76.     Neither Wis. Stat. § 422.202, entitled "Additional charges," nor any other section of the WCA, lists collection fees as a permissible fee a creditor may charge in connection with a consumer credit transaction.

77.     Because personal loans, including Plaintiff's loan, are consumer credit transactions, the nebulous reference to non-interest "Post Charge-Off Charges or Fees" in Exhibits A and B falsely represents or implies that Defendant has a right to add collection fees to the debt.

78.     Even if a provision of any agreement between Plaintiffs and the original creditor would purport to permit Defendant to add a collection fee, the WCA prohibits such fees.  Wis. Stat. § 421.106(1) ("Except as otherwise provided in chs. 421 to 427, a customer may not waive or agree to forego rights or benefits under chs. 421 to 427."); *See also Lox v. CDA, Ltd.*, 689 F.3d. 818 (7th Cir. 2012) (false representation that attorney fees would be added when they could not be, violated 1692e).

79.     Further, the alleged debt has been accelerated, and there are no late fees that could conceivably be added to Plaintiff's alleged debt.  *E.g., Rodriguez v. Codilis & Assocs., P.C.*, No. 17-cv-3656, 2018 U.S. Dist. LEXIS 54898, at *11 (N.D. Ill. Mar. 30, 2018) ("As Rodriguez points out, BSI cannot impose late charges for failure to make monthly payments after a loan has been accelerated.") (citing *Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 793 n.1 (7th Cir. 2003)).

80.     Plaintiff was confused by Exhibits A and B.

81.     The unsophisticated consumer would be confused by Exhibits A and B.

82.     Plaintiff had to spend time and money investigating Exhibits A and B.

15

83. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of <u>Exhibits A and B</u>.

### The FDCPA

84. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med.*

16

*Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

17

85.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

86.     Misrepresentations of the character, amount or legal status of any debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such

18

misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

87. The FDCPA requires debt collectors to provide certain information and notices to consumers within five days of the initial contact with the consumer:

(a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(2) the name of the creditor to whom the debt is owed;

15 U.S.C. § 1692g(a)(2).

88. To satisfy § 1692g(a)(2), the debt collector must state the name of the creditor in a non-confusing manner:

The recipients of these letters would therefore find themselves obliged to guess who currently owned the debts in question. Since the name was on the letters, some might correctly guess that Asset Acceptance was the current creditor, but a lucky guess would have nothing to do with any disclosure the letters provided. Compliance with the clear requirements of § 1692g(a)(2) demands more.

*Janetos*, 825 F.3d at 323.

89. For purposes of Plaintiff's claim under 15 U.S.C. §§ 1692e, 1692e(2)(A) and 1692e(10), Defendants' omission is a material violation of the FDCPA.

90. Misrepresentation of the creditor's identity is a misrepresentation of the character and legal status of the debt. 15 U.S.C. § 1692e(2)(A). *Janetos*, 825 F.3d at 324 ("Knowing the current creditor 'potentially affects the debtor in the most basic ways, such as what the debtor should write after 'pay to the order of' on the payment check to ensure that the debt is satisfied.") (quoting *Eun Joo Lee v. Forster & Garbus LLP*, 926 F. Supp. 2d 482, 488 (E.D.N.Y. 2013).

19

91.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

92.     15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

93.     15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

94.     15 U.S.C. § 1692e(8) specifically prohibits "communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

95.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

### The WCA

96.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

97.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

98.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

20

99.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies, including punitive damages. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

100.    The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

101.    Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

102.    Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

103.    Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer … in such a manner as can reasonably be expected to threaten or harass the customer."

104.     Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …."

105.     Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

106.     Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

107.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

108.     Exhibits A and B are misleading and confusing as to the name of the creditor to whom the debt is owed.

109.     Exhibits A and B contain contradictory and confusing account information.

110.     Exhibit A states that the debt has a "Last Payment Date" of March 8, 2018 but contradicts this information by stating that the "Last Payment Amount" is "N/A" and that the "Payments, Credits or Adjustments" associated with the alleged debt are "$.00."

111.     Exhibit B states that the debt has a "Last Payment Date" of February 26, 2019 and that the "Last Payment Amount" is "$75.00," but contradicts this information by stating that the "Payments, Credits or Adjustments" associated with the alleged debt are "$.00."

112.     Exhibits A and B falsely represent that the debt can, or will, accrue "Post Charge-Off Interest" and "Post Charge-Off Charges and Fees" when, in fact, Defendant was not authorized to collect any post charge-off interest and there were no Post Charge-Off Charges and Fees that could legally be collected.

113.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), 1692e(10).

**COUNT II – WCA**

114.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

115.    <u>Exhibits A and B</u> falsely represent that the debt can, or will, accrue "Post Charge-Off Interest" and "Post Charge-Off Charges and Fees" when, in fact, Defendant was not authorized to collect any post charge-off interest and there were no Post Charge-Off Charges and Fees that could legally be collected.

116.    Defendant violated Wis. Stat. 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

**CLASS ALLEGATIONS**

117.    Plaintiff brings this action on behalf of four Classes.

118.    Class I ("Misleading Creditor Class") consists of:

(a) all natural persons in the United States of America (b) who were sent a collection letter by Defendant, (c) stating that the "Original Creditor" is WebBank and that the "Original Servicer" is "Lending Club Corporation," (d) and not stating a "Current Creditor," (e) where the letter was mailed to attempt to collect a debt incurred for personal, family or household purposes, (f) between December 9, 2018 and December 9, 2019, inclusive, (g) and was not returned by the postal service.

119.    Class II ("Last Payment Amount: N/A Class") consists of:

(a) all natural persons in the United States of America (b) who were sent a collection letter by Defendant, (c) stating that the "Last Payment Date" was a date certain, (d) and also stating that the "Last Payment Amount" was "N/A," (e) where the letter was mailed to attempt to collect a debt incurred for personal, family or household purposes, (f) between December 9, 2018 and December 9, 2019, inclusive, (g) and was not returned by the postal service.

120.    Class III ("Payments, Credits or Adjustments: $.00 Class") consists of:

(a) all natural persons in the United States of America (b) who were sent a collection letter by Defendant, (c) stating that the "Last Payment Date" was a date certain and that the "Last Payment Amount" was an amount certain, (d) and also stating "Payments, Credits or Adjustments: $.00," (e) where the letter was mailed to attempt to collect a debt incurred for personal, family or household purposes, (f) between December 9, 2018 and December 9, 2019, inclusive, (g) and was not returned by the postal service.

121.    Class IV ("Wisconsin Class") consists of:

(a) all natural persons in the State of Wisconsin (b) who were sent a collection letter by Defendant, (c) in the form of <u>Exhibit A or B</u> stating "Post Charge-Off Interest: $.00" and "Post Charge-Off Charges or Fees: $.00" (d) where the letter was mailed to attempt to collect a debt incurred for personal, family or household purposes, (e) between December 9, 2018 and December 9, 2019, inclusive, (f) and was not returned by the postal service.

122.    Each Class is so numerous that joinder is impracticable.

123.    Upon information and belief, there are more than 50 members of each Class.

124.    There are questions of law and fact common to the members of each Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

125.    Plaintiff's claims are typical of the claims of the members of each Class.  All are based on the same factual and legal theories.

126.    Plaintiff will fairly and adequately represent the interests of the members of each Class.  Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

127.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

128.    Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Classes and against Defendant for:

    (a)      actual damages;

    (b)      statutory damages;

    (c)      attorneys' fees, litigation expenses and costs of suit; and

    (d)      such other or further relief as the Court deems proper.

Dated: December 9, 2019

**ADEMI & O'REILLY, LLP**

By:    /s/ John D. Blythin
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        jblythin@ademilaw.com
        meldridge@ademilaw.com
        jfruchter@ademilaw.com
        bslatky@ademilaw.com